# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| BRITTANY JOHNSON, JONATHAN JOHNSON, AND AUSTIN JOHNSON | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 2:17cv4-WHA |
| EARL JACKSON, | ) ) | (wo) |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This case is before the court on a Motion for Summary Judgment (Doc. #29), filed by the Plaintiffs and a Motion to Strike the Affidavit of Andrea Hatchcock filed by the Defendant (Doc. #38).

This case was originally filed as an interpleader action. The insurance company, National Union Fire Insurance Company of Pittsburgh, PA, paid insurance policy proceeds into court, and sought the court's determination as to competing claims. The court discharged the insurance company and realigned the parties.

The re-aligned Plaintiffs have moved for summary judgment. The Defendant moves to strike one affidavit upon which the Motion for Summary Judgment is based.

For the reasons to be discussed, the Motion to Strike is due to be GRANTED in part and DENIED in part and the Motion for Summary Judgment is due to be GRANTED.

### II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A),(B). Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

Cynthia Johnson ("the Decedent") was insured under National Union Fire Insurance Company of Pittsburgh, PA ("National Union") Policy Number SRG-000914074-A ("the Policy") issued by National Union to Phenix Transportation West, Inc. ("Phenix Transportation").

In 2014, the Decedent was in a relationship with Defendant Earl Jackson ("Jackson"). Jackson worked for Phenix Transportation. During the course of their relationship, the Decedent traveled with Jackson while he drove for Phenix Transportation. Jackson took out the Rider Insurance Policy covering the Decedent while she was a passenger in Jackson's vehicle, and paid the premiums on the Policy. No beneficiary form was completed. The Policy provided as follows: "Upon receipt of due written proof of death, payment for loss of life of an Insured will be made, in equal shares, to the survivors of the first surviving class of those that follow: the Insured's (1) spouse; (2) children . . . ." (Doc. #1-1 at p.10).

Plaintiffs Brittany Johnson, Jonathan Johnson, and Austin Johnson ("the Johnsons") are children of the Decedent. When the Decedent was killed in 2016 as a result of a motor vehicle accident in which she was a passenger in the vehicle being drive by Jackson, $200,000 became payable under the Policy. Robert Schwartz, the father of the Decedent, made a claim on behalf of the Johnsons. Jackson also made a claim on the Policy as the Decedent's common law husband.

It is the status of Jackson as the Decedent's common law husband which is at issue. Relevant to that status are the facts of Jackson's previous relationship with Regina Lynn Whidby

("Whidby"). Jackson married Whidby in Autauga County, Alabama in 2008, before Jackson's relationship with the Decedent. The Johnsons claim that there is no record of a divorce filed for Jackson and Whidby in Alabama, where they lived together during their marriage, or in Georgia, where Whidby lived once Whidby and Jackson no longer lived together.

The Johnsons have submitted evidence to support that no record of divorce has been located in Alabama or in two counties in Georgia.

## IV. DISCUSSION

The Johnsons have moved for summary judgment on the basis that Jackson cannot prove the first element a common law marriage to the Decedent. A finding of common law marriage requires a showing through clear and convincing evidence that the (1) the person had the capacity to marry, (2) a present, mutual agreement to permanently enter the marriage relationship to the exclusion of all other relationships, (3) public recognition of the relationship as a marriage and public assumption of marital duties and cohabitation. *McMullins v. McMullins*, 202 So. 3d 332 (Ala. Civ. App. 2016). If Jackson was never legally divorced from Whidby, he could not have had a valid common law marriage to the Decedent, no matter the circumstances of their living together.

The Johnsons argue that Jackson was legally married to Regina Whidby ("Whidby") at the time of his relationship with the Decedent and, therefore, lacked the capacity to marry the Decedent. When their motion first was filed, the Plaintiffs presented evidence in the form of an affidavit from an investigator that there is no record of a divorce of Jackson and Whidby in Alabama (Doc. #29-3 at p.2), and a Certificate of Failure to Find which states that no record of divorce was found to exist in Alabama. (Doc. #29-2).

Jackson contends that this evidence does not conclusively show that he was married to Whidby during the time of his relationship with the Decedent because there is evidence that he was divorced from Whidby. He states in an affidavit that he and Whidby agreed to divorce and filled out divorce paperwork. Jackson also presents evidence that Whidby married Eric Scott Turpin ("Turpin") on June 27, 2009 in Georgia. Jackson presents an affidavit from an attorney who states that under Georgia law, applicants for marriage must produce evidence of all prior divorces and must produce a copy of a final decree of divorce signed by a Judge. (Doc. #33-1). Therefore, Jackson has argued, the fact that Whidby was allowed to marry Turpin in Georgia is evidence that she was divorced from Jackson at the time she married Turpin. Jackson also has argued that a marriage is presumed to have been dissolved by divorce, citing *Leonard v. Leonard*, 560 So. 2d 1080 (Ala. Civ. App. 1990), and that the Johnsons' evidence does not overcome that presumption.

In further support of their motion, the Johnsons subsequently presented two pieces of evidence, to which the court gave Jackson additional time in which to file a response. In the additional evidence, specifically an affidavit from Whidby, Whidby states that when she filled out the marriage license application for her marriage to Eric Turpin, she indicated on the application that she had previously been married to and divorced from Michael Whidby, and produced a divorce certificate from her marriage to Michael Whidby. (Doc. #36-1 at p.2). She states that she did not produce a divorce from her marriage to Jackson because she had no such evidence. (Doc. #36-1). Whidby also states that she filed divorce papers in Dawson County, Georgia, but the case was dismissed because she did not live in that county. (Doc. #36-1).

The other evidence newly submitted by the Plaintiffs is an affidavit of Andrea Hatchcock

("Hatchcock"), which is the subject of the Motion to Strike. Jackson contends that the court should strike Hatchcock's statements that relay her phone conversations with court clerks. In response, the Plaintiffs have submitted affidavits of the court clerks. Therefore, to the extent that Hatchcock's affidavit relays information she learned from court clerks, the Motion to Strike is due to be GRANTED. The court will only consider Hatchcock's affidavit statements to the extent that they are within her personal knowledge.

The affidavits of the Clerks establish that there is no record of divorce between Whidby and Jackson in the relevant counties in Georgia. The Clerk of the Superior Court of Dawson County, Georgia states in his affidavit that the only file located for Whidby and Jackson was one in which a divorce case was dismissed because it was not properly before the court. (Doc. #41-2). The Deputy Clerk of the Superior Court of Hall County, Georgia states in her affidavit that she did not locate any record in Hall County, Georgia of a record of divorce, a divorce action, or any decree of divorce between Whidby and Jackson (Doc. #41-1).

Jackson says that Whidby told him that she was going to file divorce papers in Hall County, Georgia directly after meeting with him in Gainesville, Ga. (Doc. #33-1, ¶14). That is accepted as true. Whidby says that she actually filed the papers in Dawson County, and did not file them in Hall County. (Doc. #36-1, at p.2). That is also accepted as true, so the evidence shows that Whidby told Jackson she would filed in Hall County but actually did not. This conclusion is also established by the documents before the court.

The records from the Superior Court of Dawson County, attached to the Affidavit of Clerk (Doc. #41-2) show the following:

On February 25, 2009, Whidby filled out a Hall County form Petition for Divorce from

Jackson, with a verification before a notary public in Hall County. On the same day she signed a form Settlement Agreement, and an Agreement to Try, sworn to before the same notary public, but there was no signature by Jackson in the places provided for Signature of Husband. Also, on that day Whidby signed a Certificate of Service by mail form.

None of these documents are contained in the records of the Superior County of Hall County. They are, however, in the records of the Superior Court of Dawson County, shown as being filed there on April 29, 2009. The Hall County Petition for Divorce form shows that "Hall" was stricken through and "Dawson" written in at the top. Also, on April 29, 2009 a Summons was issued there with the Settlement Agreement form, and an Agreement to Try signed by Whidby, but with the place for Signature of Husband marked out and "Sheriff's Service" written in. On the same day a Domestic Relations Actions Standing Order was entered in Dawson County, with a Certificate of Service showing service by mail to Whidby and to Jackson c/o Autauga County Sheriff's Department, Prattville, Alabama, and a Rule Nisi Scheduling Hearing in Domestic Case set a hearing for June 18, 2009. The records show that the Autauga County Sheriff's Department received the documents for service on Jackson on May 4, 2009, and a Sheriff's Entry of Service was filed in the Dawson County court on June 15, 2009, showing that Jackson had been personally served on June 11, 2009. They further show that on June 23, 2009 the Superior Court judge in Dawson County entered a Rule Nisi to Jackson to show cause before him on July 16, 2009 why the prayers of Whidby should not be granted. The Rule Nisi was served on Jackson c/o Autauga County Jail on June 29, 2009. The records do not show an appearance by either Whidby or Jackson in court on July 16.

Finally, on July 22, 2009, the court entered an Order Dismissing the case as not properly

7

before the Court because neither Whidby nor Jackson was a resident of Dawson County, Georgia.

Taking all evidence in a light most favorable to Jackson, the court finds that Jackson thought he had been divorced from Whidby in Hall County, Georgia, but in fact, he and Whidby have never been lawfully divorced anywhere. There is no genuine issue of fact as to that.

The court in the *Leonard* decision relied on by Jackson explained that a presumption of divorce can be overcome by proof, from the appropriate court records from the places the parties to the marriage have lived, that a divorce has not been granted to either party to the marriage. 560 So. 2d at 1083. That proof has been presented here.

Jackson's argument that there remains a question of fact is that Whidby was required to present evidence of a divorce from him to be married in Georgia, so there is a question of fact as to whether Whidby "obtained a divorce or annulment without Jackson's knowledge." (Doc. #39 at p.5). Jackson further argues that if the court accepts that Whidby lied on her marriage application, the court should not accept any portion of her affidavit.

The affirmative statements in Whidby's affidavit are that Whidby did not file for divorce from Jackson in Hall County, her divorce case in Dawson County was dismissed, and that she did not present evidence of a divorce from Jackson when she applied for a marriage license to marry Turpin because she did not have any evidence. Whether or not Whidby should have been issued a marriage license under Georgia law, these statements by Whidby are not undermined by the fact that she was issued a marriage license to marry Turpin.[1] Furthermore, as outlined above, there is affirmative evidence presented by the Johnsons that was no divorce between Jackson and

---

[1] That marriage being invalid, Whidby and Turpin have since divorced.

8

Whidby in Alabama or in the county in Georgia in which Whidby lived or in Hall County. In view of the affirmative evidence that there is no record of divorce as between Whidby and Jackson in Alabama or Hall County, Georgia, and that the divorce case Whidby filed in Dawson County, Georgia was dismissed, the court must conclude that Jackson has failed to create a genuine issue of fact as to whether he was divorced from Whidby at the time of his relationship with the Decedent. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts."). Therefore, summary judgment is due to be GRANTED on the issue of Jackson's capacity to enter into a common law marriage with Cynthia Johnson.

## V. CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1. The Motion to Strike is GRANTED as to statements relayed by court clerks in Andrea Hatchcock's affidavit and is DENIED as to statements within Andrea Hatchcock's personal knowledge.

2. The Motion for Summary Judgment is GRANTED to the Plaintiffs on the issue of Jackson's capacity to enter into a common law marriage with the Decedent.

3. A separate Judgment will be entered in accordance with this Memorandum Opinion and Order.

Done this 22nd day of May, 2017.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE